**James WORKMAN, Plaintiff,**

v.

**COLUMBIA NATURAL RESOURCES,**
**Defendant.**

Civ. A. No. 93–103.

United States District Court,
E.D. Kentucky,
Pikeville.

June 29, 1994.

Teddy L. Flynt, Salyersville, KY, for plaintiff.

Gregory L. Monge, Matthew J. Wixsom, VanAntwerp, Monge, Jones & Edwards, Ashland, KY, for defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

The instant diversity action is before the Court upon motion of the defendant, Columbia Natural Resources, by counsel, for summary judgment. [Record No. 18]. Fully briefed, this matter is ripe for decision.

### FACTUAL BACKGROUND

On February 2, 1993, around midnight, the plaintiff, James Workman [Workman], while attempting to extinguish a forest fire and working as an employee of the Division of Forestry of the Commonwealth of Kentucky, was injured when his bulldozer hit a four-inch above-ground natural gas pipeline owned by the defendant, Columbia Natural Resources [Columbia]. At the time of the accident, the plaintiff was bulldozing a four to five inch cut into the top soil making a dirt road or firebreak when he hit and ruptured the pipeline [Line GG68]. [Record No. 19, p. 1]. The particular location where Workman hit the pipeline was located in the Gunlock area of Willis Branch in Magoffin County, Kentucky, a wooded area approximately nine-tenths of a mile from the nearest public road. [Record No. 19, p. 2]. Prior to the rupture on Willis Branch, Workman had ruptured a two-inch natural gas pipeline which was located approximately seven-tenths of a mile from the nearest public road. Further, Workman had seen and was cognizant of several other natural gas pipelines in the area.

Workman filed the instant action against Columbia on theories of negligence and strict liability. The defendant has moved to dismiss both claims.

### REQUIREMENTS FOR SUMMARY JUDGMENT

A "new era" for summary judgment practice has been ushered in as a result of three decisions handed down by the United States Supreme Court in 1986. *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). *Street* appraised the impact of the three cases, concluding with the following principles for summary judgment practice:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient dis-agreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street,* 886 F.2d at 1479–80.

## DISCUSSION

■ When jurisdiction is based on diversity of citizenship the district court must follow the substantive law of the forum state as prescribed by its legislature and supreme court. *In re Akron–Cleveland Auto Rental, Inc.,* 921 F.2d 659, 662 (6th Cir.1990). *See also Rector v. General Motors Corp.,* 963 F.2d 144, 146 (6th Cir.1992).

### A. *DUTY TO MARK THE PIPELINE.*

#### 1. *Statutory Duty.*

■ The defendant claims that it was under neither a statutory nor a common law duty to mark the Line GG68 pipeline. The Natural Gas Pipeline Safety Act [Pipeline Act], 49 U.S.C.App. § 1672, provides that the Secretary of the Department of Transportation "shall, by regulation, establish minimum federal safety standards for the transportation of gas and pipeline facilities." The "transportation of gas" however, is defined as:

> [the g]athering, transmission or distribution of gas by pipeline ... in interstate ... commerce; except that it shall not include the gathering of gas in those *rural locations* which lie outside the limits of any incorporated or unincorporated city, town, village, or any other designated residential or commercial area....

29 U.S.C.App. § 1671(3) (emphasis added). The defendant tendered the affidavits of Martin Holly and James Browning in support of its assertion that the pipeline in question was located in a rural location "well beyond those limits of any designated city, town, village or other residential or commercial area...." as provided for in the Pipeline Act. [Record No. 19]. The plaintiff has not challenged this claim and has failed to offer contrary proof. Therefore, the Court finds that the Natural Gas Pipeline Safety Act, 49 U.S.C.App. § 1671 *et seq.* is not applicable to

the instant circumstances and imposes no duty on the defendant to mark the pipeline in question.

The plaintiff has failed likewise to rebut the defendant's argument that the Kentucky legislature has not enacted its own guidelines for the transportation of natural gas other than providing for criminal penalties for violations of the Pipeline Act. Ky.Rev.Stat.Ann. § 278.992.

### 2. *Common Law Duty.*

The Kentucky Supreme Court has not determined whether a natural gas pipeline owner, like the defendant, has a duty to mark pipelines for notice purposes under the instant circumstances. "Where the state supreme court has not spoken, [the district court's] task is to discern, from all available sources, how that court would respond if confronted with the issue." *Miles v. Kohli & Kaliher Assocs.*, 917 F.2d 235, 241 (6th Cir. 1990).

### A. *Negligence.*

■■■ The defendant argues that the plaintiff's "failure to mark" claim, on its face, speaks to the tort claim of "failure to warn" which the Kentucky Supreme Court has recognized as a valid cause of action. The legal question is whether the defendant gas company owed a duty to the plaintiff, a forest fighter, to mark the above-ground pipe line located on Willis Branch. Under Kentucky law, actionable negligence consists of a duty, a violation thereof and a consequent injury. *Watters v. TSR, Inc.*, 904 F.2d 378, 380 (6th Cir.1990) (citing *Illinois Central R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky.1967)).

Even though the Kentucky Supreme Court has recognized "failure to warn" as a valid cause of action, the court has never spoken regarding a gas company's duty to mark an above-ground pipeline in a rural location. The defendant urges the court to adopt the rule set forth by other jurisdictions considering claims similar to those asserted herein which have imposed a duty on pipeline owners to install their lines and to avoid dangers from occurrences such as leaks and breaks in the pipe which could result from others making ordinary use of the surface. *See Phillips Pipe Line Company v. Razo*, 420 S.W.2d 691, 693 (Tex.1967); *Wideman v. Mississippi Valley Gas Co.*, 507 F.2d 658 (5th Cir.1975) (holding that there was a duty to warn the decedent who hit an underground gas line while he was operating a small road grader causing a fire and explosion only if type of injury or accident could have been reasonably anticipated and holding that no duty would arise as to any "unusual, improbable, extraordinary and freakish accident" that, even though possible a reasonable man would not have considered probable) (citations omitted). The defendant argues that the plaintiff was not making ordinary use of the land at the time of the accident and his injuries were not foreseeable.

■■■ Although the Kentucky Supreme Court has never determined whether a pipeline owner owes a duty to fire fighters to mark above-ground pipelines, the court has adopted a universal rule of negligence. That is, in Kentucky "[e]very person owes a duty to every other person to exercise *ordinary care* in his activities to prevent any such *foreseeable injury* from occurring to such other person." *Watters*, 904 F.2d at 380 (citing *M & T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky.1974)).

■■■ In the instant action, it is undisputed that the location of the ruptured pipeline was in a rural area nine-tenths of a mile from the nearest road.[1] Whether the defendant's injuries were foreseeable, in light of the rural

---

1. The Court rejects the defendant's argument that the fireman's rule should apply to these circumstances. The fireman's rule is normally applied where an injured fireman sues the entity that caused the fire that injured the fire fighter. In this action, there has been no claim that the fire was caused by the defendant gas company. *See Buren v. Midwest Industries, Inc.*, 380 S.W.2d 96, 98 (Ky.1964).

The Court also rejects the defendant's argument that no duty should be imposed upon the defendant because the plaintiff had notice that there were above-ground pipelines in the area. The plaintiff, by affidavit, denies any knowledge of the pipeline on Willis Branch. Whether his knowledge of pipelines in the surrounding areas is enough to put him on notice of the pipeline he ruptured on Willis Branch creates an issue of fact for the jury and would be an inappropriate determination on summary judgment.

location of the pipelines and the plaintiff's activities on the land at the time of his injuries, is an issue that should be submitted to the jury. *See Seelbach v. Cadick,* 405 S.W.2d 745, 750–51 (Ky.1966) (citing Prosser on Torts, 3d Ed. section 52 with approval: "In any case where there might be reasonable difference of opinion as to foreseeability of a particular risk, ... the question is for the jury...."). Hence, the defendant's motion to dismiss the negligence claim will be denied.

### B. *Strict Liability.*

■ The defendant argues that as a common carrier of a public need it should not be subject to strict liability. The plaintiff has failed to respond to the defendant's motion to dismiss the strict liability claim.

In *Fields v. Western Kentucky Gas Company,* 478 S.W.2d 20, 23 (Ky.Ct.App.1972), the Kentucky Court of Appeals determined that gas companies are generally held to the standard of ordinary care, provided that care is exercised with regard to the dangerous character of the commodity transported through the company pipelines. *See also Louisville Gas Co. v. Guelat, et al.,* 150 Ky. 583, 150 S.W. 656 (1912) (holding that a gas company is not an insurer of its pipes and it is not liable if it fails to keep its gas pipes in such condition as to prevent the escape of gas where it has used ordinary care to this end). Further, Kentucky courts have been reluctant to impose strict liability on public services and public necessities. In *Kentucky Utilities Co. v. Auto Crane Co.,* 674 S.W.2d 15 (Ky.Ct.App.1983), the Kentucky Court of Appeals declined application of strict liability to the transmission of electricity recognizing that "the rules for strict liability for abnormally dangerous activities rarely apply to activities carried on in pursuance of a public duty." *Id.* at 18 (citing Restatement (Second) of Torts, § 521 (1981)). *See also Collins v. Liquid Transporters,* 262 S.W.2d 382 (Ky.1953) (involving the transportation of gasoline).

The Kentucky legislature has indicated that the transmission of natural gas through pipelines is a public service in K.R.S. § 278.470:

**Companies transporting oil or gas by pipeline are common carriers.** Every company receiving, transporting or delivering a supply of oil or natural gas for public consumption is declared to be a common carrier, and the receipt, transportation and delivery of natural gas into, through and from a pipeline operated by any such company is declared public use.

Other jurisdictions have recognized the transportation of natural gas through pipelines as a matter of common usage. *See New Meadows Holding Co. v. Washington Water Power Co.,* 102 Wash.2d 495, 687 P.2d 212 (1984); *McLane v. Northwest Natural Gas Co.,* 255 Or. 324, 467 P.2d 635, 638 (1970) (holding that the distribution of gas in mains and pipes in streets and houses is a matter of common usage); *Melso v. Sun Pipe Line Co.,* 394 Pa.Super. 578, 576 A.2d 999, 1003 (1990). Hence, the defendant, Columbia, should not be subject to strict liability and the plaintiff's claim for the same will be dismissed.

### *CONCLUSION*

Having considered the record in light of the "new era" criteria applicable to summary judgment, *see Street,* 886 F.2d 1472 (6th Cir. 1989); *Darnell v. Campbell County Fiscal Court,* 731 F.Supp. 1309, 1311–12 (E.D.Ky. 1990),

**IT IS HEREBY ORDERED:**

(1) That the motion of the defendant, Columbia Natural Resources, Inc. for summary judgment [Record No. 18] be, and the same hereby is, **DENIED IN PART AND GRANTED IN PART**

(2) That the plaintiff's strict liability claim be, and the same hereby is, **DISMISSED.**